UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────

CORNELIUS REDDEN, 01-B-2658,

                Petitioner,

        -v-                                    07-CV-506(MAT)
                                               **ORDER**
JAMES CONWAY, Superintendent,
Attica Correctional Facility,

                Respondent.

─────────────────────────────

## I.   Introduction

        *Pro se* petitioner Cornelius Redden ("petitioner") has filed a
timely petition for writ of habeas corpus pursuant to 28 U.S.C.
§ 2254 challenging his conviction in Erie County Court of two
counts of Criminal Possession of a Weapon in the Third Degree
(former N.Y. Penal L. § 265.02(4) & (5)(ii)), Unlawful Possession
of Marijuana (N.Y. Penal L. § 221.05), and two violations of the
New York Vehicle and Traffic Law. The judgment of conviction,
entered November 29, 2001, followed a jury trial before Judge
Timothy Drury. Petitioner was sentenced as a persistent felony
offender to concurrent, indeterminate terms of nineteen years to
life for the weapons counts and an unconditional discharge for each
of the remaining counts.

## II.  Factual Background and Procedural History

        On May 18, 2000, at approximately 12:30p.m., petitioner was
observed driving a damaged car backwards down Kosciuszko Street in
the City of Buffalo by two uniformed police officers traveling in

a marked patrol vehicle. T. 20-21.[1] The officers approached the vehicle, which at that point had stopped, and ascertained that the driver and sole occupant, petitioner, did not possess a driver's license. T. 24. He was asked to exit the car and used the passenger side door to do so; the driver's side was damaged. T. 73. Petitioner was then arrested for driving without a license and was told by officers to put his hands on the hood of the vehicle for a pat-down. T. 27. As petitioner placed his hands on the car, he abruptly started to run. Both officers chased petitioner, who was found several minutes later hiding in the attic area of a house at 117 Kosciuszko. Officers found $2,000 in cash and a plastic bag of marijuana in the pockets of petitioner's jacket, in addition to the keys to the damaged car petitioner had been driving. While petitioner was secured in a patrol car, Officer Julie Ledwin used the keys to enter the vehicle. Inside, she found a loaded pistol. T. T. 30, 32, 34-35, 36-38, 79-80, 107-08.

Following the jury's guilty verdict, petitioner was adjudicated a persistent felony offender by the trial court. The county court also denied motions to set aside the verdict pursuant to N.Y. Crim. Proc. L. ("C.P.L.") § 330.30. Petitioner was subsequently sentenced to concurrent terms of imprisonment totaling 19 years to life, which he is presently serving.

---

[1] Citations to "T.__" refer to pages of the trial transcript.

Petitioner's conviction was unanimously affirmed by the Appellate Division, Fourth Department, on March 17, 2006. <u>People v. Redden</u>, 27 A.D.3d 1173 (4th Dept. 2006). Permission to appeal to the New York Court of Appeals was denied on July 6, 2006, <u>see</u> <u>Redden</u>, 7 N.Y.3d 793, and reconsideration of the application was denied on October 31, 2006. <u>Redden</u>, 7 N.Y.3d 869.

Petitioner then filed a motion to set aside his sentence pursuant to N.Y. Crim. Proc. L. ("C.P.L.") § 440.20(1). <u>See</u> Resp't Exhibits ("Ex.") D. That motion was denied by the county court on June 15, 2005. <u>See</u> Mem. & Order, Ind. No. 00-1050-001, Erie County Court (Drury, J.) dated 6/15/2005 (Ex. D). Leave to appeal that decision was denied on May 9, 2006. <u>See</u> Order, KA-05-01881, App. Div. (Pine, A.J.) dated 5/9/2006 (Ex. D).

This habeas petition followed, in which petitioner alleges the following grounds for relief: (1) the physical evidence seized from petitioner's vehicle was the result of an illegal search and should have been suppressed at trial; (2) the evidence of weapon possession was legally insufficient; (3) the county court erred in denying petitioner's motion to set aside the verdict pursuant to C.P.L. § 330.30 on the basis of newly-discovered evidence; (4) the trial court abused its discretion in adjudicating petitioner a persistent felony offender; and (5) petitioner was denied the effective assistance of counsel at sentencing. Petition ("Pet.") ¶ 12(a)-(e); Pet'r Mem. Points I-V. For the reasons that follow,

the Court finds that petitioner is not entitled to the writ, and the petition is dismissed.

## III. Discussion

### A. General Principles Applicable to Federal Habeas Review

#### 1. Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not dicta) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v.

<u>Herbert</u>, 342 F.3d 69, 73-74 (2d Cir. 2002), <u>cert. denied</u>, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. <u>Williams</u>, 529 U.S. at 413; <u>see also</u> <u>id.</u> at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." <u>Aparicio v. Artuz</u>, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." <u>Id.</u> This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Parsad v. Greiner</u>, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), <u>cert. denied sub nom. Parsad v. Fischer</u>, 540 U.S. 1091(2003). A state

court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

### 2. Exhaustion Requirement

A federal court may not consider a petition for habeas corpus unless the petitioner has exhausted all state judicial remedies. See 28 U.S.C. § 2254(b)(1)(A); see also Picard v. Connor, 404 U.S. 270, 275 (1971); Dorsey v. Kelly, 112 F.3d 50, 52 (2d Cir. 1997). To satisfy the exhaustion requirement, a habeas petitioner must have "fairly presented" his claims to the state courts, thereby affording those courts the "opportunity to pass upon and correct alleged violations of ... [a] prisoner's federal rights." Picard, 404 U.S. at 275 (citation omitted).

The standards for presenting federal constitutional claims to state courts are not so stringent as to require the recitation of "book and verse on the federal constitution." Picard, 404 U.S. at 278 (citation omitted). However, the state courts must be "apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.'" Jones v. Vacco, 126 F.3d 408, 413 (2d Cir. 1997) (quoting Daye v. Att'y Gen. of N.Y., 696 F.2d 186, 191 (2d Cir. 1982) (en banc)). Petitioners can ensure that state courts are "alerted to the fact that [they] are asserting claims under the United States Constitution," Duncan v.

<u>Henry</u>, 513 U.S. 364, 365-66 (1995), by presenting their claims in a fashion demonstrating either "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) [an] assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) [an] allegation of a pattern of facts that is well within the mainstream of constitutional litigation." <u>Daye</u>, 696 F.2d at 194; <u>accord</u> <u>Petrucelli v. Coombe</u>, 735 F.2d 684, 688 (2d Cir.1984). Once the state courts are apprised of the constitutional nature of a petitioner's claims, the exhaustion requirement is generally fulfilled when those claims have been presented to "the highest court of the pertinent state." <u>Bossett v. Walker</u>, 41 F.3d 825, 828 (2d Cir. 1994) (citation omitted).

**B.    Merits of the Petition**

      **1.    Grounds One and Three are Not Cognizable On Habeas Review**

            **a.    Fourth Amendment Claims**

Petitioner first contends that there was no probable cause to search the vehicle he operated, nor was the search justified as a lawful "inventory search," and therefore the weapon found in the vehicle should have been suppressed by the state court. Pet. ¶ 12(a). The Appellate Division rejected petitioner's Fourth Amendment claims on the merits and on procedural grounds. <u>Redden</u>, 27 A.D.3d at 1173-74. The respondent has correctly submitted that

petitioner's claims are not reviewable by this Court pursuant to the doctrine of Stone v. Powell, 428 U.S. 465 (1976).

In general, state court defendants are barred from obtaining habeas relief based upon Fourth Amendment claims. "Where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494, (1976) (footnotes omitted). The Second Circuit has noted that Stone requires only that "the state have provided the *opportunity* to the state prisoner for full and fair litigation of the Fourth Amendment claim." Gates v. Henderson, 568 F.2d 830, 839 (2d Cir. 1977) (en banc), cert. denied, 434 U.S. 1038 (1978) (emphasis added). A federal court may undertake habeas review only in one of two instances: (1) "if the state provides no corrective procedures at all to redress Fourth Amendment violations," or (2) if "the state provides the process but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process. . . ." Id. at 840; accord Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992).

A petitioner receives a "full and fair opportunity" to litigate his Fourth Amendment claim where the state provides a "'statutory mechanism' for suppression of evidence tainted by an unlawful search and seizure." McPhail v. Warden, Attica Corr.

Facility, 707 F.2d 67, 69 (2d Cir. 1983).  It is well-established that New York affords criminal defendants the requisite corrective procedures.  See C.P.L. § 710.10 et seq.; see Capellan, 975 F.2d at 70 (noting that "federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 710.10 et seq. (McKinney 1984 & Supp.1988) as being facially adequate").  Here, petitioner was afforded a suppression hearing by the county court, after which the court issued a bench decision denying petitioner's motion. He then raised his Fourth Amendment claims in the Appellate Division, Fourth Department. Petitioner was thus clearly provided with the opportunity to fully litigate his Fourth Amendment claims in the state courts, and may not now raise these claims on habeas review.

Although there is a possibility that habeas relief may be available on a Fourth Amendment claim "if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process," Cappellan, 975 F.3d at 70, there was no such unconscionable breakdown present on this record.

Accordingly, petitioner does not make any claim that would fall within the exception that would permit habeas review of his Fourth Amendment challenge, and this ground for relief does not support issuance of the writ.

## b.    Newly-Discovered Evidence

Likewise, petitioner's third claim, that the state court improperly denied his § 330.30 motion on the basis of newly-discovered evidence, does not raise a constitutional issue warranting habeas review. Pet. ¶ 12(c).

Following his trial, petitioner moved to set aside the verdict pursuant to C.P.L. § 330.30 based on newly-discovered evidence. A hearing was conducted in the county court in which petitioner called his girlfriend, Evanie Gulledge ("Gulledge"), to testify that she put her father's gun under the passenger seat of her mother's car in order to keep the weapon away from her children at home. The following day, the vehicle was involved in a collision. Petitioner was asked by Gulledge's mother to move the car in order to have it repaired. It was at that point in time when petitioner was, inconveniently, encountered by Buffalo police officers on Kosciuszko Street.   Gulledge testified that she did not tell anyone, including petitioner, that she put the gun in the car until after the trial because she was scared. See 330.30 Hr'g Mins. dated 10/9/2001 & 11/29/2001. The county court found that Gulledge's testimony was not credible and that the claim of newly-discovered evidence had not been sustained by petitioner. See 330.30 Hr'g Mins. dated 11/29/2001 at 78.

A claim "based on newly discovered evidence ha[s] never been held to state a ground for federal habeas relief absent an

independent constitutional violation occurring in the underlying state criminal proceeding." Ortega v. Duncan, 333 F.3d 102, 108 (2d Cir. 2003) (quoting Herrera v. Collins, 506 U.S. 390, 400 (1993)); see also Corchado v. Rabideau, 576 F.Supp.2d 433, 444-45 (W.D.N.Y. 2008) ("This Court is unable to grant habeas relief on the claim of newly discovered evidence, given the absence of an independent constitutional violation having occurred in [petitioner's] criminal proceeding.") Here, petitioner has not demonstrated a violation of any independent constitutional right in connection with his § 330 proceedings, and any stand-alone claim of newly-discovered evidence is therefore not cognizable on habeas review.

Insofar as petitioner seeks to challenge the county court's application of New York law in denying his motion to set aside the verdict, "[s]ection 330.30 provides a state post-conviction remedy, not a federal right" and "[f]ederal habeas relief ... is only available to remedy violations of federal law." Paredes v. Marshall, No. 07 Civ. 9862, 2008 WL 4937566, at *7 (S.D.N.Y. Nov.20, 2008). Because the crux of petitioner's argument is that the county court's determination was factually incorrect, such a claim does not implicate a constitutional concern, and a violation of state law does not state a cognizable habeas claim. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). This claim, therefore, must be dismissed.

## 2. Grounds Two and Four are Without Merit

### a. Legal Insufficiency Claim

Petitioner next avers that there was insufficient proof that he possessed the weapon that was found in the vehicle he was driving when he was approached by Buffalo Police. Pet. ¶ 12(b). On that point, the Appellate Division held, "the evidence is legally sufficient to support his conviction of the two weapons counts based on the applicability of the automobile presumption . . . and the verdict on those counts is not against the weight of the evidence." Redden, 27 A.D.3d at 1174.

A petitioner challenging the sufficiency of the evidence of his guilt in a habeas corpus proceeding "bears a very heavy burden." Fama v. Commissioner of Corr. Services, 235 F.3d 804, 813 (2d Cir. 2000). Habeas corpus relief must be denied if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). This sufficiency-of-evidence inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." Herrera v. Collins, 506 U.S. 390, 402 (1993)(emphasis added). Stated another way, the reviewing court must determine "whether the jury, drawing reasonable inferences from the evidence,

may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt ... view[ing] the evidence in the light most favorable to the government, and constru[ing] all permissible inferences in its favor." United States v. Carson, 702 F.2d 351, 361 (2d Cir. 1983) (internal citations omitted), cert. denied sub nom. Mont v. United States, 462 U.S. 1108 (1983). A federal court reviewing an insufficiency-of-the-evidence claim must look to state law to determine the elements of the crime. Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999) (citation omitted), cert. denied, 528 U.S. 1170 (2000).

The proof presented at trial can be summarized as follows: On May 18, 2000, petitioner was observed driving a damaged car backwards by two uniformed Buffalo police officers traveling in a marked patrol vehicle. Petitioner, the driver and sole occupant, did not have a driver's license when questioned by police. After petitioner exited the vehicle and was about to be patted-down by police, petitioner fled on foot. Following a brief chase, petitioner was found hiding in an attic, lying on a floor covered in animal feces. He got up when directed, but refused to drop the jacket he was holding. After officers "grabbed the coat away," they found cash and marijuana inside the front pocket of the jacket. Then, upon an inventory search of the vehicle, officers found an operable Argentine pistol lying on the rear floor behind the passenger seat. T. 20-29, 32-38, 77-82, 132-33.

At trial, the prosecution relied on the "automobile presumption," see N.Y. Penal L. § 265.15(3), which allows the trier of fact to presume that the occupants of an automobile possess certain weapons found therein. The presumption may be applied if it can be shown that the weapon is found in the automobile after one is seen fleeing from it, but before someone else could place a weapon inside the vehicle. See People v. Heizman, 127 A.D.2d 609 (2nd Dept. 1987).

Here, a jury could readily conclude that no one else had put the gun in the automobile after petitioner had fled the scene but before the car was searched, a time frame of approximately 10 to 12 minutes. The incident occurred during the day, and the car was locked and inaccessible except for a broken driver's side window. Additionally, petitioner's behavior in fleeing the car and hiding in an attic covered in feces was probative of his knowledge of the gun in the vehicle. Accordingly, any rational trier of fact could find that the proof at trial satisfied the elements of the two counts of Criminal Possession of a Weapon in the Third Degree for which he was convicted.[2] Accordingly, the Appellate Division's

---

[2] N.Y. Penal L. § 265.02(4), which was repealed in 2006, provided that a person was guilty of criminal possession of a weapon in the third degree when "[s]uch person possesses any loaded firearm. Such possession shall not, except as provided in subdivision one or seven, constitute a violation of this section if such possession takes place in such person's home or place of business." Subsection (5)(ii) requires that "such person possesses a firearm and has been previously convicted of a felony or a class A misdemeanor defined in this chapter within the five years immediately preceding the commission of the offense and such possession did not take place in the person's home or place of business."

disposition was not contrary to, or an unreasonable application of <u>Jackson v. Virginia</u>.

### b. Persistent Felony Offender Adjudication

Petitioner contends that his adjudication as a persistent felony offender ("PFO") was improper on the grounds that the trial court erroneously relied on false hearsay testimony, and that New York's discretionary enhanced sentencing statute[3] violates the precepts of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).[4] Pet. ¶ 12(d); Pet'r Mem. ¶ 12(d).

Petitioner raised his challenge to the hearsay testimony on direct appeal. The Fourth Department rejected that claim, holding that the hearsay evidence concerning petitioner's uncharged criminal conduct was properly considered under the plain language of the statute. <u>Redden</u>, 27 A.D.3d at 1174-75 (quoting C.P.L. § 400.20(5)).

Likewise, the county court denied petitioner's constitutional challenge to the enhanced sentencing procedures as set forth in

---

[3] New York's persistent felony offender statute is codified at N.Y. Penal L. § 70.10, and provides that, "[w]hen the court has found, pursuant to the provisions of the criminal procedure law, that a person is a persistent felony offender, and when it is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest, the court . . . may impose the sentence of imprisonment authorized by that section for a class A-I felony."

[4] The Supreme Court in <u>Apprendi v. New Jersey</u> held that any fact that increases penalty for crime beyond prescribed statutory maximum (other than the fact of a prior conviction) must be submitted to jury and proved beyond reasonable doubt.

C.P.L. § 400.20[5], finding that the statute "does not utilize elements necessary to prove guilt of the crime charged as factors to impose an enhanced sentence" and thus does not run afoul of Apprendi. See Mem. & Order, Ind. No. 00-1050-001, Erie County Court (Drury, J.) dated 6/15/2005.

With respect to petitioner's claim that the trial court relied on "false hearsay testimony" to enhance his sentence, the Supreme Court has held that, in non-capital cases, due process is satisfied so long as a sentence is not based on "materially untrue" information. Townsend v. Burke, 334 U.S. 736, 741 (1948); United States v. Miller, 263 F.3d 1, 5 n.5 (2d Cir. 2001). The Second Circuit has determined that, to ensure that the sentencing body does not rely on materially untrue information, a defendant must be given notice of, and an opportunity to respond to, the facts upon which the sentencing body is relying. Torres v. United States, 140 F.3d 392, 404 (2d Cir. 1998), cert. denied, 525 U.S. 1042 (1998); United States v. Berndt, 127 F.3d 251, 257-58 (2d Cir. 1997). Here, petitioner was given notice of, and the opportunity to respond to the allegations contained in the court's § 400.20 notice. Defense counsel cross-examined the prosecution's witnesses as to petitioner's history and character at the PFO hearing. The county court ultimately credited the testimony of those witnesses, which

---

[5] C.P.L. § 400.20 specifies the procedures that New York courts must follow in order to impose a PFO sentence.

it was entitled to do, and no due process violation occurred during those proceedings.

The second aspect of petitioner's challenge to his persistent felony offender adjudication also does not state a ground for habeas relief. The claim that New York's PFO statute is an unconstitutional violation of <u>Apprendi</u> has now been rejected by the Court of Appeals for the Second Circuit. <u>See</u> <u>Portalatin v. Graham</u>, 624 F.3d 69, (2d Cir. 2010) (en banc); <u>accord</u>, <u>West v. Breslin</u>, 08-0274-pr, 2011 WL 441182 (2d. Cir Feb. 9, 2011).

Accordingly, petitioner's claims arising out of his adjudication as a persistent felony offender must be dismissed.

### 3. Grounds Five is Unexhausted, and Without Merit

Petitioner concludes his petition by arguing that he was denied the effective assistance of counsel at his PFO/sentencing hearing. Pet. ¶ 12(e). On this point, the Appellate Division concluded that petitioner's claim was based on matters outside of the record and thus was not subject to review on direct appeal. <u>Redden</u>, 27 A.D.3d at 1175. Petitioner did not raise this contention in a post-conviction motion to set aside the judgment of conviction, and the claim is therefore unexhausted. <u>See, e.g.</u>, <u>Snitzel v. Murry</u>, 371 F.Supp.2d 295, 299 (W.D.N.Y. 2004). Notwithstanding petitioner's failure to properly exhaust his claim of ineffective assistance of counsel, this Court may choose to reach the merits of his claim pursuant to 28 U.S.C. § 2254(b)(2),

in order to deny the petition. See Travis v. N.Y.S. Div. of Parole, 1998 WL 34002605, *3-4 (N.D.N.Y. Aug. 26, 1998).

A number of district courts in this Circuit have held that "in habeas corpus cases, potentially complex and difficult issues about the various obstacles to reaching the merits should not be allowed to obscure the fact that the underlying claims are totally without merit." Brown v. Thomas, 2003 WL 941940, *1 (S.D.N.Y. March 10, 2003) ; see also Boddie v. New York State Div. of Parole, 285 F.Supp.2d 421, 428 (S.D.N.Y. 2003). However, there remains no specific guidance from the Second Circuit or the Supreme Court regarding the standard to be used determining whether an unexhausted claim should be dismissed on the merits under 28 U.S.C. § 2254(b)(2). Jones v. Lape, 2010 WL 3119514, *10 (N.D.N.Y. May 28, 2010) (citing Hernandez v. Conway, 485 F.Supp.2d 266, 273 n.1 (W.D.N.Y. 2007) (Bianchini, M.J.) (noting that a majority of the district courts have used a "patently frivolous" standard, while others use a "non-meritorious" standard, dismissing a claim when it is "perfectly clear that the [petitioner] does not raise even a colorable federal claim") (quotations and citations omitted)).[6]

---

[6] The "patently frivolous" language appeared in Jones v. Senkowski, 2001 WL 1230800, at *4 (2d Cir. Oct. 5, 2001), a decision that was later vacated and withdrawn, see Naranjo v. Filion, 2003 WL 1900867, at *8 n.14 (citing Jones v. Senkowski, 2002 WL 246451 (2d Cir. May 22, 2002), amended by Jones v. Senkowski, 42 Fed.Appx. 485 (2d Cir.2002), cert. denied, 537 U.S. 1177 (2003)), while one district court found that a "non-meritorious" standard was more appropriate. See Basnight v. Keane, 2001 WL 901139, at *5 n.1 (E.D.N.Y. July 31, 2001)

Regardless of the standard employed, petitioner's claim does not provide a basis for habeas relief.

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court held that in order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that his counsel provided deficient representation and that the petitioner suffered prejudice as a result of the deficient performance. <u>Strickland</u>, 466 U.S. at 687-88. Under the first prong, counsel's conduct must have so undermined the adversarial process that the process cannot be relied upon as having a just result. <u>Id.</u> at 686. Counsel is "strongly presumed" to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment. <u>Id.</u> at 689. In this regard, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. <u>Id.</u> at 690. As to the second prong, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional or erroneous advice, the result of the proceeding would have been different. <u>Id.</u>

Prior to petitioner's PFO hearing on May 9, 2001, he was provided with the opportunity to controvert any allegation contained in the C.P.L. § 400.20 notice.[7] On April 25, 2001,

---

[7] C.P.L. § 400.20(3) provides:

An order directing a hearing to determine whether the defendant should be sentenced as a persistent felony offender must be filed with the clerk of

petitioner's counsel controverted several aspects of the court's prepared document, including three of petitioner's alleged previous convictions. See PFO Hr'g Mins. dated 4/25/2001 at 3-5, 22-25. Counsel informed the trial court that petitioner did not wish to present any evidence at the forthcoming hearing. Id. at 17-18.

On May 9, 2001, petitioner's attorney withdrew his plan to controvert petitioner's prior convictions, "based on [his] investigation and research." Counsel then clarified that he still sought to challenge the portion of the statement dealing with his client's history, background, and character. PFO Hr'g Mins. dated 5/9/2001 at 3-11. Two witnesses were then called by the prosecutor and cross-examined by defense counsel. Counsel did not offer any proof at the hearing, and the trial court reserved decision. Id. at 36. Petitioner was ultimately found by the county court to be a persistent felony offender on the basis of his prior convictions, and determined that an enhanced sentence was warranted due to petitioner's extensive, violent criminal history. See Mem., Dec. & Order, Ind. No. 00-01050-001, Erie County Court (Drury, J.) dated 3/23/2001. Petitioner was then sentenced to 19 years to life on the weapons possession counts, to be served concurrently, and received

---

the court and must specify a date for the hearing not less than twenty days from the date the order is filed. The court must annex to and file with the order a statement setting forth the following: (a) The dates and places of the previous convictions which render the defendant a persistent felony offender as defined in subdivision one of section 70.10 of the penal law; and (b) The factors in the defendant's background and prior criminal conduct which the court deems relevant for the purpose of sentencing the defendant as a persistent felony offender.

unconditional discharges on the remaining counts. <u>See</u> Sentencing Mins. dated 11/29/2001 at 83.

While petitioner asserts that his attorney was unfamiliar with the PFO proceedings and "did not know what legal arguments to make," <u>see</u> Pet. ¶ 12(e), petitioner does not state what counsel could have done in addition at the hearing. The record indicates that counsel investigated petitioner's file and, based on his research of the relevant law, found no basis to challenge the validity of petitioner's previous convictions. He did, however, seek to challenge portions of the § 400.20 statement concerning the petitioner's history and character and cross-examined the prosecution's witnesses on those issues. Accordingly, counsel's conduct and statements on the record do not indicate that he failed to investigate petitioner's criminal history prior to the PFO hearing.[8] Counsel's representation at the hearing, therefore, did not fall below an objective standard of reasonableness under the terms of <u>Strickland</u>, 466 U.S. at 688. <u>See, e.g.</u>, <u>Ennis v. Walker</u>, 2001 WL 409530 (S.D.N.Y. April 6, 2001) (holding that counsel was not ineffective for failing to challenge and investigate validity

---

[8] The Court notes that, prior to the instant conviction, petitioner had four previous felony convictions, including burglary, weapons possession, and assault on two corrections officers. <u>See</u> C.P.L. § 400.20 Statement, Ind. No. 00-01050-001, dated 3/26/2001. Two days before the commission of the instant crimes, petitioner broke into a home in Niagara County and at gunpoint, took money and jewelry from the victim, for which petitioner was convicted of Robbery in the Third Degree upon a plea of guilty. He also had approximately 30 arrests since the age of 17, which encompassed conduct of trespassing, assault, reckless driving, weapon possession, possession of stolen property, and larceny. <u>See id.</u>

of petitioner's predicate conviction for purposes of persistent violent felony offender adjudication). This unexhausted claim is therefore dismissed on the merits pursuant to 28 U.S.C. § 2254(b)(2).

## IV. Conclusion

For the reasons stated above, Cornelius Redden's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Petitioner has failed to make a "substantial showing of a denial of a constitutional right", 28 U.S.C. § 2253 (c)(2), the court declines the issue of certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:    February 24, 2011
          Rochester, New York